Ramnarine v Staten Is. Supreme Ct. (2024 NY Slip Op 50231(U))

[*1]

Ramnarine v Staten Is. Supreme Ct.

2024 NY Slip Op 50231(U)

Decided on March 5, 2024

Supreme Court, Richmond County

Marrazzo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 5, 2024
Supreme Court, Richmond County

Mahabir Ramnarine and THERESA RAMNARINE, Plaintiff(s),

against
Staten Island Supreme Court, CRIMINAL COURT OF THE CITY OF NEW YORK COUNTY OF RICHMOND, STATEN ISLAND COURTHOUSE, CITY OF NEW YORK, DEPARTMENT OF CITYWIDE ADMINITRATIVE SERVICES OF THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF DESIGN AND CONSTRUCTION, JACOBS PROJECT MANAGEMENT CO., ABBCD, LLC and DBBCD, LLC., Defendants.
JACOBS PROJECT MANAGEMENT CO., Third-Party Plaintiff,
against
ATLAS ROLL-OFF CORPORATION, Third-Party Defendant.
ATLAS ROLL-OFF CORPORATION, Second Third Party Plaintiff,
against
BETONS FABRIQUE DU LAC, INC. Second Third-Party Defendant.

Index No. 101455/14

Orlando Marrazzo, J.

The Court marked the following e-filed documents associated with motion sequence 0013. 0014 and 0015 fully submitted on November 22, 2023.

E-Filed Document #:
Plaintiff's Notice of Motion for Summary Judgment dated September 5, 2023; Affirmation In Support dated September 5, 2023, Statement of Material Facts dated September 5, 2023 and annexed Exhibits 206-209
Defendants CONY, DCAS; NYC DEPARTMENT OF DESIGN & CONSTRUCTION Notice of Cross Motion dated November 10, 2023, for Summary Judgment, Affirmation In Support of Cross Motion and In Opposition to Plaintiff's Motion dated November 10, 2023, Statement of Material Facts dated November 10, 2023, Memorandum of Law dated November 10, 2023 and annexed Exhibits 212-224
Defendant and Third-Party Plaintiff JACOBS PROJECT MANAGEMENT CO. Notice of Cross-Motion for Summary Judgment dated November 15, 2023, Affirmation in Support of Cross-Motion and in Opposition to Plaintiff's Motion dated November 15, 2023.and annexed Exhibits 235-241
Second Third-Party Defendant BETONS FABRIQUE DU LAC INC. Affirmation in Opposition to Plaintiff's Motion for Summary Judgment dated November 27, 2023, Response to Statement of Material Facts dated November 17, 2023 242-243
Plaintiff's Affirmation in Opposition to Defendants' Cross- Motions and Reply dated November 20, 2023 245-248
Defendant CONY, DCAS; NYC DEPARTMENT OF DESIGN & CONSTRUCTION Affirmation in Reply dated November 21, 2023 249
Upon the forgoing papers, Plaintiff's motion (No.0013) for summary judgment on the sole issue of liability pursuant to Labor Law 240(1) is granted; defendants, CITY OF NEW YORK (hereinafter referred to as CONY), DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES OF THE CITY OF NEW YORK and the CITY OF NEW YORK DEPARTMENT OF DESIGN AND CONSTRUCTION cross-motion (No.0014) for summary judgment dismissing plaintiffs' claims pursuant to Labor Law sections 240, 241(6) 200 and common law negligence as well as summary judgment dismissing the crossclaims for common law indemnification and contribution asserted by co-defendant JACOBS PROJECT MANAGEMENT CO is denied and co-defendant, JACOBS PROJECT MANAGEMENT CO cross-motion (No. 0015) seeking summary judgment dismissing plaintiff's Amended Verified Complaint pursuant to Labor Law 240, 241(6) 200 and common law negligence and any all cross-claims against said co-defendant is denied.
This action arises as a result of a construction accident that occurred on September 3, 2013 during the construction of the Staten Island Courthouse wherein plaintiff MAHABIR RAMNARINE, an employee of Third-Party Defendant and Second Third Party Plaintiff Atlas Roll-Off Corporation, was alleged to be injured when a concrete slab being lifted fell onto plaintiff's left foot. Plaintiff claims violations of the Labor Law sections 240(1) as well 241(6) 200 and common law negligence. 
The procedural history of the instant action has been thoroughly outlined by counsels and for judicial economy, this Court need not repeat same. 
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
It is well settled law that the proponent of a summary judgment bears the burden of proof by submitting evidence in admissible form to establish entitlement to judgment as a matter of law. (CPLR 3212[b]; Alvarez v. Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v. City of New York, 49 NY2d 557 [1980]; Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co., 25 NY3d 507 [2015]). Once a prima-facie showing is made, the burden of proof shifts to the party opposing the motion to demonstrate the existence of genuine triable issues of fact through admissible evidence. (See Alvarez, Zuckerman, supra.). Should a plaintiff fail to meet its burden of proof, the motion must be denied, regardless of the sufficiency of opposing papers. (Winegrad v. New York Univ. Med., 64 NY2d 851 [1985]).
It is also well established that Labor Law 240(1) imposes a nondelegable duty upon all contractors and owners and their agents to provide safety devices necessary to protect a worker from risks inherent in elevated work sites, "regardless of whether they supervise or control the work. (Ochoa v. JEM Estate Co., LLC.,— AD3d &mdash, 2024 NY App. Div. LEXIS 181). The statute is one of absolute liability upon owners, contractors and its agents who fail to provide or provide inadequate safety devices. To be successful on a motion for summary judgment pursuant to Labor Law 240(1), a plaintiff must establish that the statute was violated, and such violation was a proximate cause of plaintiff's accident. (Estrella v. ZRHLE Holdings LLC., 218 AD3d 640 [2nd Dept., 2023]). While such statute is commonly referred to as the "Scaffold Law, it is also applicable to failing objects. (Simmons v. City of New York, 165 AD3d 725 [2D Dept., 2018]; Narducci v. Manhassett Bay Assoc., 96 NY2d 259 [2001]). Where it is claimed that a falling object caused the injury/ injuries, the plaintiff must establish that object fell due to the absence or inadequate safety device(s) as listed in the statute. (Fabrizi v. 1095 Ave. of the Ams., L.L.C., 22 NY3d 658 [2014]). It is "designed to prevent those types of accident in which the scaffold, hoist, stay, ladders and other protective devices prove inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person". (Ross v. Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494 [1993]; Runner v. New York Stock Exch., Inc., 13 NY3d 599 [2009]). Further, a differential in elevation will not be considered "de minimus, particularly given the weight of the object and the amount of force it [is] capable of generating, even over a relatively short descent." (Runner, supra.). While contributory and comparative negligence are not defenses under Labor Law 240(1), where plaintiff's action is proven to be the sole proximate cause of the accident and resultant injury, no recovery can be afforded to plaintiff pursuant to Labor Law 240(1). (Bascombe v. West 44th St. Hotel, LLC., 124 AD3d 812 [2d Dept., 2015]; Roblero v. Bais Ruchel High Sch., Inc. 175 AD3d 1446 [2d Dept., 2019]; Ochoa, supra.; Ross, supra.),
Counsel for plaintiff contends that that plaintiff was a covered worker pursuant to Labor Law 240(1) employed by Third-Party Defendant and Second Third Party Plaintiff Atlas Roll-Off Corporation, (hereinafter referred to as ATLAS) during the construction of the Staten Island Courthouse Project. Plaintiff alleges that on September 3, 2013 while so employed, plaintiff was stuck by a failing object while being lifted as a result of the failure by the owner, general contractor and/or its agents to provide proper protection equipment as listed in the statute and that the violation of this statute was a proximate cause of his accident and resultant injuries. Counsel further contends that the defendant THE CITY OF NEW YORK (hereinafter referred to [*2]as CONY owned the property where plaintiff's accident occurred and that co-defendant JACOBS PROJECT MANAGEMENT CO. (hereafter referred to as JACOBS), although named the "construction manager" was a "de facto general contractor" and statutory agent of the owner and as such both defendant CONY and JACOBS are strictly liable pursuant to Labor Law 240(1).
In support of its motion for summary judgement, plaintiff submits the following: deposition transcripts of plaintiff; plaintiff's co-worker Puran Ramkissoon; plaintiff's employer, Thomas Poliselli; defendants JACOBS employee William Gove; Second Third Party defendant BETONS employees Sylvain LaPointe and Mario Minier; a copy of a two (2) contracts between non-party defendant the Dormitory Authority of the State of New York (hereinafter referred to as DASNY) and defendant JACOBS and a copy of defendant CONY response to plaintiff's Notice to Admit. 
A review of plaintiff's deposition reveals that on September 3, 2013 he was employed by Third Party defendant/Second Third Party plaintiff ATLAS and was asked by his foreman co-worker Puran Ramkissoon, to assist in transporting pre cast concrete slabs which were to be installed to the exterior staircase being constructed for the Courthouse. Pursuant to his testimony the slab weighed approximately 1,200 pounds was approximately 3-4 feet, 12-14 inches thick with one end shorter than the other, not a square; at the time he was 5'6 inches and weighed approximately 145-150 pounds. He further testified that the precast concrete slab had pre-cut holes on four corners which did not go completely through the slab. To secure this slab for lifting he used a threaded bolt/rod approximately 15 to 18 inches long and screwed one side into the precut hole while another co-worker threaded and screwed the bolt/rod into the opposite side of the pre-cut hole in the concrete slab. He took the nylon strap attached to the bucket of the machine being used to lift the concrete slab and looped it around the bolt/stud and placed the screw into the bolt/rod.[FN1]
Upon completing this task, his co-worker who was operating the machine began lifting the slab. Pursuant to plaintiff's testimony, while the concrete slab was approximately 3 feet off the ground, he heard a clicking noise as he was guiding the concrete slab to prevent it from swaying when the concrete slab fell on his left foot. At the time he was wearing construction boots and was unable to remove his boot from under the concrete slab. Some co-workers came to lift the concrete slab off his foot. He was unable to stand due to the pain. It is unclear from his testimony if after his accident his boot was removed from under the slab or whether his foot was only released from under the slab. After the accident he noticed his left foot was bleeding. He left the scene of the accident by ambulance and was taken to Richmond University Medical Center. He was admitted to the hospital and had surgery performed on this left foot. 
Plaintiff's co-worker, Puran Ramkissoon, testified that he was the foreman for ATLAS and prior to plaintiff's accident that day he was directed/instructed by Peter from defendant JACOBS to transport pre-cast concrete slabs to the staircase for installation. Pursuant to his testimony, Peter from defendant JACOBS had to approve how to move the pre cast concrete slab and Peter watched as he took the threaded bolt/rod and place into the precut holes in the concrete slab; looped/tied the nylon rope/strap to the teeth to the bolt/rod; placed the screw onto the bolt and tied the nylon rope to the bucket on the machine being used to lift the slab. Pursuant to his [*3]testimony these bolts/rods and screws came with the delivery of the pre cast concrete slabs. He further testified, once Peter approved the manner in securing the slab for lifting, the operator of the machine lifted the slab and transported it to the staircase. He testified that he was called to another area and told plaintiff to assist in tying the precast concrete slab to the machine for lifting. He testified that he did not witness plaintiff's accident, but as he was walking away he heard a scream and turned around to see the pre cast concrete slab on top of plaintiff's foot. He, along with Tom, his supervisor and other co-workers, using a 2 x 4, were able to release plaintiff's foot from underneath the slab. The day after the plaintiff's accident, Mr. Ramkissoon returned to the scene of the accident and found a bolt/rod on the ground and attempted to screw it back in to slab. He testified that while the threaded bolt/rod went in the precut hole, it did not remain in place and came right off. 
Deposition testimony from Thomas Polsinelli, revealed he was the Vice President of ATLAS, plaintiff's employer and was responsible for overseeing site work at the job site which included excavation, footings, foundations and landscaping. While the contract for this work was between ATLAS and non-party DASNY, pursuant to his testimony, all work had to be approved by JACOBS whether it was material, means and methods or engineering drawings. That prior to his arrival at the jobsite on the day of the accident his foreman, Mr. Ramkissoon received instructions from Peter, a supervisor employed by defendant JACOBS, to move the precast concrete slabs to the staircase being erected at the site but was not present during the time Peter and Mr. Ramkissoon were together determining how to move the pre cast concrete slab. He further testified that his employees would often get directions/instructions from defendant JACOBS as to what work needed to be performed by ATLAS which superseded his direction. He testified that he was not on the jobsite daily but that Peter from defendant JACOBS was on the jobsite daily. Mr Polsinelli further testified that defendant JACOBS coordinated all the work at the jobsite and that Peter on the jobsite at the time of plaintiff's accident. His testified that he was present when plaintiff's accident occurred, watched him thread the bolt into the precast concrete slab, tie the nylon rope/strap to the bolt, place and tighten the screw onto the protruding bolt and watched as the pre cast concrete slab was being hoisted. He further testified the nylon rope was tied to the teeth of the bucket of the machine and not attached to the hook on the machine. When the concrete slab was approximately 2-3 feet off the ground he saw the slab fall from that height onto plaintiff's foot. He described the precast concrete slab being lifted as irregular in shape, "kind of oblong" weighed approximately 1,400 pounds, measured 3 feet by 4 feet and was approximately 12-18 inches thick. Pursuant to his testimony, this particular piece did not have any hooks in which to lift the slab as it was not designed to have such hooks since it was to be exposed and part of a planting device installed into the sides of the staircase. That after plaintiff's accident the NYC Department of Buildings came to the jobsite and defendant JACOBS issued his company a partial stop work order. 
A review of the deposition of William Gove revealed that he is employed by defendant JACOBS as a project executive at the time of plaintiff's accident. He testified that defendant JACOBS was the construction manager for the Staten Island Courthouse Project pursuant to a contract with non-party DASNY. He further testified that defendant JACOBS hired subcontractors at times during the project and hired a safety company to conduct safety inspections at the site as defendant JACOBS was required to conduct safety meetings as well as coordinate all work with the different contractors. He was not present at the jobsite at the time of plaintiff's accident but that Peter D'Angelo who was employed by defendant JACOBS as a [*4]super/construction inspector would at times oversee the work of ATLAS. He was aware that precast pieces of concrete slabs were to be used as part of the staircase construction on this projectHe further testified if defendant observed work was being done in an unsafe way, defendant JACOBS would stop the work. Pursuant to his testimony, an accident report was generated by defendant JACOBS and that the New York City Department of Buildings shut down Atlas from performing any lifting work. 
Second Third Party defendant produced Sylvain Lapointe who testified he is a supervisor employed by Second Third Party defendant BETONS, the manufacturer of the precast concrete slabs. His testimony revealed that a photograph shown to him at his deposition (not attached for the Court's review) depicted a precast concrete slab which did not have a burke and lifting loops to lift the precast concrete slab as it was not designed to have a burke and lifting loops. He further testified that the purpose of the threaded rods and screws which came with the delivery of the precast concrete was to attach or connect each precast concrete slab to each and not for the purpose of lifting.His testimony revealed that for those particular precast concrete slabs, without burkes and lifting loops, ropes/straps are needed to be tied around the entire slab to lift it and never saw a nylon rope attached to the threaded rod to move a piece of concrete slab of this type. Second Third Party defendant BETONS also produced Mario Minier. Mr. Minier testified that he is employed by Second Third Party defendant as a designer of concrete. He further testified that he along with other designers did the design of the concrete elements for the Staten Island Courthouse Project but did not do the production designs for this project. 
A review of the response to Plaintiffs Notice to Admit indicates that that on September 3, 2013, the defendant, the CITY OF NEW YORK admits it was the title owner of Block 6, Lot 212, also known as 22 Central Avenue, Staten Island, NY 10301 and 26 Central Avenue Staten Island, NY 10301. It is counsel's contention that this admission establishes that the defendant CONY owned the property at the time of plaintiff's accident which imposes a non-delegable duty upon defendant CONY and absolute liability upon defendant CONY pursuant to Labor Law 240(1), "regardless of whether it retained supervision or control of the work". (Ross, supra).
Additionally, plaintiff submits two contracts between defendant JACOBS and non-party DASNY and asserts that although defendant JACOBS was referred to as a "CONSTRUCTION MANAGER", these contracts give broad responsibilities to the defendant JACOBS, including the authority to control the work being performed at the construction site. A review of the entire two contracts submitted by plaintiff's counsel indicate they are between non-party DASNY, referred to as "OWNER" and defendant JACOBS, referred to as "CONSTRUCTION MANAGER". Said contracts do not define "owner" or "client" or contain any reference to a general contractor. There is also a provision in the contracts that state such contract(s) do not create any type of agency between the OWNER and the CONSTRUCTION MANAGER. However, these contracts did provide that defendant JACOBS was required to inspect work done be all contractors and control the work of all contractors. Particularly Contract# 120992 (Construction Phase Contract) and Appendix states:
CONSTRUCTION MANAGER is responsible for all of the work conducted at the site; required to "inspect all work daily"; " review all shop drawings for coordination of field conditions among Prime contractors, subcontractors, trades, etc. . . ."; "inspect materials and equipment prior to the installation. . ."; report "any job related injury, prepare/obtain same day photographs, prepare C-2 form, provide OSHA Log of Illness and Injury. . . ."
A review of Contract #120991(General Conditions Work Phase Contract) Article X, entitled PROTECTION OF RIGHTS, PERSONS AND PROPERTY as well as Appendix B, particularly Section A.1 states in part:
CONSTRUCTION MANAGER shall at all times take every precaution against injuries to persons. . .and for the safety of persons on or about the site engaged in the performance of the Work. . ..and shall establish and maintain, at all times, safety procedures in connection with the Work as required by the New York Labor Law and regulations of the Occupational Safety and Health Act (OSHA)." Section A.2. of the same contract states in part:
CONSTRUCTION MANAGER and its Contractors, and Subcontractors. . . shall be responsible for the initiation, maintenance, and supervision of safety precautions and programs in connection with the Work. . .." (emphasis added)
Article X section C(c) states:
CONSTRUCTION MANAGER "assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatsoever. . .to all persons, whether employees or not of the CONSTRUCTION MANAGER. . .caused by, resulting from, arising out of, or occurring in connection with the negligent or alleged negligent execution of the Work."
Section D(3) of the same Article entitled Protection of Lives and Health states the "CONSTRUCTION MANAGER alone shall be responsible for the safety, efficiency and adequacy of the CONSTRUCTION MANAGER's Work, plant appliances and methods and for any damage which may result from the failure or the improper construction, maintenance or operation of such Work, plant, appliances and methods".
(emphasis added)
Section D(6) states in part the "OWNER may inspect the job-site at any time without notice. . .[i]f the OWNER finds the CONSTRUCTION MANAGER is not complying with the provisions of this Article. . . the CONSTRUCTION MANAGER is to correct any deficiency. . .and [u]pon reinspection. . . [if] deficiencies have not been corrected or in the instance of a safety violation(s) must be corrected before work continues. . .the CONSTRUCTION MANAGER is given three(3) hours to make correction(s). . .." Based upon a reading of these contracts, plaintiff asserts that defendant JACOBS was a "de facto general contractor".
Generally, a construction manager is not responsible for injuries under Labor Law 240(1) but "may be vicariously liable as an agent of the property owner" where a construction manager "has the ability to control the activity which brought about the injury". (Walls v. Turner Construction Co., et al 4 NY3d, 861 (2005). It is not the "label" that is the determining factor, but rather the court must consider other factors upon the facts presented on a case-by-case basis, including whether the construction manager's had a duty to oversee the construction site and trade contractors; whether the construction manager had the authority the to control activities at the site and stop unsafe practices and whether there was a general contractor on site. Where a construction manager has the authority to or ability or the right to exercise control over the activity which bought about the injury, he/she will be considered an agent of the owner for the purpose of imposing liability pursuant to Labor Law 240(1). "A party is deemed to be an agent of the owner or general contractor under the Labor Law when it has supervisory control and [*5]authority over the work being done where plaintiff was injured". (Kavouras v. Steel-Moore Contr., Corp, 192 AD3d 784 [2d Dept., 2022] quoting Linkowski v. City of New York, 33 AD3d 971[2d Dept., 2006]; Mitchell v. 148th St. Jamaica Condominium, 221 AD3d 596 [2d Dept., 2023]; Walls, supra.) It is not necessary to determine whether the construction manager exercised such authority but rather whether it had a right to exercise that authority. (Seferovic v. Atlantic Real Estate Holdings. LLC., 127 AD3d 1058 [2d Dept., 2015]; Samaroo v. Patmos Fifth Real Estate, Inc., 102 AD3d 944 [2d Dept., 2013]; Linkowski, supra.; Nucci v. County of Suffolk, 204 AD3d 817 [2d Dept., 2022]).
Here the contracts evince that the defendant JACOBS had broad contractual responsibilities to oversee the performance of the work, particularly as to safety and coordinate the work. Further, the testimony of its own witness established that the defendant JACOBS had the ability to stop work and would do so if defendant observed unsafe conditions. The testimony of Mr. Ramkissoon established that the Peter from JACOBS was present to supervise and approve the way he secured the precast concrete slab and the way same was to be lifted for transport. Mr. Polsinelli 's testimony also established that the defendant JACOBS would often direct and instruct his men as to the work to be performed on the jobsite. It is in this context of the admissible evidence submitted by plaintiff that defendant JACOBS possessed myriad abilities and/or authority and/or right to exercise control over the work, particularly that of the type which brought about plaintiff's gravity related injuries. Most importantly, the evidence presented demonstrates that not only did defendant JACOBS possess the authority to exercise control over the work being performed but did exercise that control on the day of plaintiff's accident. In so doing, the defendant JACOBS had a duty to provide a worker, particularly plaintiff with proper protective equipment and a duty to avoid and/or correct an unsafe condition to protect the plaintiff. 
Here, plaintiff has submitted evidence that at the time his injury he was involved in an elevated and gravity related risk within the contemplation of Labor Law 240(1). Plaintiff has also produced evidence that a single nylon strap/rope was used to lift the precast concrete slab weighing approximately 1,000 -1,400 pounds, irregular in shape, without any proper protective equipment as listed in the statute such as a sling or additional ropes placed on or around the slab to prevent this object from falling and striking plaintiff. While proximate cause is an issue more appropriately left to the trier of fact, based upon the evidence submitted it cannot be said that plaintiff actions were the sole proximate cause of the accident. In the present matter, plaintiff has established, prima facie, that he was at the construction site performing work associated with the construction of the Staten Island Courthouse project; that he was exposed to activity which involved an elevated related risk where no safety devices were provided the failure of which was a proximate cause of his resultant injuries. (Estrella, supra.) Plaintiff has met his burden of proof and having done so, the burden of proof shifts to defendants to establish that genuine issues of fact exist requiring the Court to deny plaintiff's instant application.
Defendant CONY opposes plaintiff motion for summary judgement pursuant to Labor Law 240(1) upon the ground that plaintiff failed to demonstrate the "required ownership interest by the City" and that there is a threshold issue of fact as to "how' and "why" plaintiff's accident occurred which would preclude granting plaintiff's motion for summary judgement pursuant to Labor Law 240(1). In addressing defendant's opposition upon the ground that defendant CONY was not the owner of the property at the time of plaintiff's accident, the court is confined to the admissible evidence submitted by the defendant CONY which includes the same evidence [*6]plaintiff has submitted for the Court's review, except submits a copy of the contract between non-party DASNY and ATLAS which he does not reference in his opposition. It is counsel's assertion that defendant's response to plaintiff's Notice to Admit was somehow qualified to "insulate the defendant CONY from liability." However, a plain reading of its response admits that on the date of plaintiff's accident defendant CONY was the record title owner of the property. Such response when made did not provide a detailed qualification pursuant to CPLR 3123 which prescribes the way a responding party, should it deem necessary, to qualify such response. Counsel's belated attempt to do so some six (6) years after its admission is fatal to its opposition. Beyond conclusory, speculative, and hearsay statements, the defendant CONY fails to produce any admissible evidence to dispute ownership of the property and fails to raise a triable issue of fact as to ownership of the property. (Seferovic, supra.). Further, regardless of whether the Defendant CONY supervised or controlled the work, as the undisputed owner, pursuant to Labor Law 240(1), defendant CONY has a non-delegable duty to provide safety devices to protect workers from the inherent risks of elevated work sites. Failure to do so constitutes a violation of said statute imposing absolute liability.
Similarly, contrary to counsel's assertions, the "how" or "why" plaintiff's accident occurred is undisputed. Defendant CONY fails to provide any evidence to contradict the way this accident occurred. Counsel asserts at length, relying on the transcripts submitted, that the concrete slab was improperly constructed and the proximate cause of plaintiff's injuries. However, a reading of the transcripts contradicts this assertion. In fact, both Mr. Polsinelli and Mr. Lapointe testified that the precast decorative concrete slab was not designed to have burkes and lifting loops. Further, pursuant to the testimony of Mr. LaPointe, the protruding bolt and/or rod was not intended to be used to lift the precast concrete slab. It is of no consequence, assuming arguendo, that the evidence established the concrete slab which fell onto plaintiff's foot was improperly constructed and/or improperly secured, such assertions do not negate defendant's non-delegable duty as an owner to provide a worker with proper protective equipment, the failure of which constitutes a violation of Labor Law 240(1). (Rodriguez v. Waterfront Plaza, LLC. 207 AD3d 49 [2d Dept., 2022]; Escobar v. Safi, 150 AD3d 1081 [2d Dept. 2017]). Nor has defendant CONY submitted any evidence that proper protective equipment was provided to the plaintiff during the lifting of the concrete slab or that such was provided, and plaintiff failed to avail himself to same or that the protective equipment provided was defective. Similarly, defendant CONY does not allege or establish that plaintiff was the sole proximate cause of his accident and resultant injuries. Lastly, defendant CONY does not dispute that the precast concrete slab fell from an elevated height in opposing plaintiff's application.[FN2]
 Based upon the evidence submitted by defendant CONY, defendant has failed to meet its burden of proof to establish, prima facie, the existence of triable issues of fact pursuant to Labor Law 240(1). 
Co-defendant JACOBS opposes plaintiff's application for summary judgement pursuant to Labor Law 240(1) upon sole ground that issues of fact remain regarding plaintiff's version of [*7]how this accident occurred. However, contrary to counsel assertions, like those of co defendant CONY, defendant JACOBS fails to establish that an issue of fact exists as to how plaintiff's accident happened or contradicts same. It is undisputed that plaintiff's accident occurred while material, i.e., a 1000-to-1400-pound precast concrete slab in the process of being lifted became dislodged and fell onto plaintiff's foot. For the reasons as stated above as to co-defendant CONY, defendant JACOBS has failed to meet its burden of proof which warrants granting plaintiff's application pursuant to Labor Law 240(1).
DEEFENDANT CONY DCAS AND NYC DEPARTMENT OF DESIGN AND CONSTRUCTION CROSS MOTION FOR SUMMARY JUDGEMENT TO DISMISS ALL CLAIMS AND COUNSTERCLAIMS PLAINTIFF'S
Defendants, CONY DCAS and NYC DEPT. OF D & C seek summary judgment dismissing plaintiff's complaint pursuant to Labor Law 240(1); 241(6), 200 and common law negligence. It is worth repeating that a party moving for summary judgment, must establish, prima facie, it's for entitlement to same. In the first instance defendant contends that the CONY was not the owner for the purposes of Labor Law 240(1) and 241(6). For clarity, the Court will address each section of the Labor Law separately.
Labor Law Section 240(1)
In support of its motion for summary judgment counsel contends that the defendant CONY did not own the property where plaintiff's accident occurred, similar to its position taken in opposition to plaintiff's motion seeking summary judgment pursuant to Labor Law 240(1). As discussed above, the Court finds no significance in defendant's belated attempt to qualify its response to plaintiff's Notice to Admit. Further, defendant CONY fails to submit any evidence to dispute the fact that the defendant owned the property at the time of plaintiff's accident. Counsel further relies upon the contracts between non-party defendant DASNY and co-defendant JACOBS, which refer to non-party DASNY as being the "OWNER". As previously discussed, said contracts do not define the term "owner". Nor do said contract(s) contain any provision which states that non-party DASNY was the owner of the property at the time of plaintiff's accident. Beyond conclusory statements, defendant CONY fails to provide any evidence, either in the form of an affidavit and/or documents which establishes that the CONY did not own the property. Nor does defendant cite any authority demonstrating that defendant CONY did not own the property. While counsel cites numerous cases, one in which non-party DASNY was purported to be an owner for the purpose of Labor Law claims, counsel fails to establish that the evidence submitted in that case is analogous to the evidence in this matter. Defendant's request for this Court to follow a previous decision in Richmond County is flawed. Such decision is of no import to this court having equal jurisdiction, particularly here where counsel fails to establish that the purported evidence submitted in this case is the same evidence that was submitted in a prior decision. 
Additionally, counsel conflates the duty imposed upon an owner under Labor Law 240(1) and Labor Law 241(1). Labor Law 240(1) imposes absolute liability upon, inter alia, owners, regardless of whether said owner controlled or supervised the activity that produced the plaintiff's injury. 
Lastly, defendant CONY, who has the burden of proof, to establish, prima facie, its entitlement to summary judgment, fails to address the issue of proximate cause in its opposition [*8]or that Labor Law 240(1) was not violated by defendant CONY, as owner of the property. To the extent that counsel relies upon the deposition transcripts of witnesses RAMKISSOON and POSINELLI, such testimony fails to establish that the statute was not violated. None of the testimony submitted establishes that any type of protective devices, particularly a "sling", or "ropes" or "other devices" were placed on or around the precast concrete slab to give proper protection to plaintiff in the performance of his work to avoid and prevent this material from falling. Whether or not the product and/or material being hoisted was "defective" is of no consequence to imposing liability pursuant to Labor Law 240(1). Rather, it is the lack of furnishing proper equipment to protect the worker in performing such labor. As such, defendants fail to meet their burden of proof that genuine issues of fact exist which warrant denial of its motion for summary judgment dismissing plaintiff's claim pursuant to 240(1) as a matter of law. Having failed to meet its burden of proof, there is no necessity for the Court to consider plaintiff's opposition.
Labor Law 241(6)
Labor Law 241(6) imposes a non-delegable duty upon all owners, contractors and their agents in the construction or demolition of buildings or excavation and requires that "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to persons so employed therein. . .." (Labor Law 241(6)). In asserting a claim pursuant to said statue a plaintiff must establish specific safety violations of the Industrial Code applicable to the facts of this case. (Aragano v. State of New York, 147 AD3d 808 [2d Dept., 2017]). 
Aside from again asserting the defendants CONY did not own the property, counsel contends that defendant CONY it had no choice but to allow plaintiff onto its property to the "utter exclusion of city influence" and that the defendants did not control and or supervise the work being conducted at its property. However, no evidence has been submitted to establish such beyond counsel's conclusory statement. Nor is same required where a plaintiff has established violations of the Industrial Code, as in the present matter. Counsel's reliance upon the testimony of William Gove and Thomas Polsinelli is misplaced and ignores that witness William Gove testified that DCAS regularly attended meetings at the site and that after plaintiff's accident the NYC Department of Buildings issued a stop work order. Witness Thomas Polsinelli also testified that after plaintiff's accident, the NYC Department of Buildings conducted an on-site inspection and issued a partial stop work order. To the extent counsel asserts that the defendant CONY did not supervise or control the plaintiff's work pursuant to Labor Law 241(6), the issue is whether the defendant CONY had authority to exercise control or supervision. In that regard, counsel fails to produce admissible evidence establishing that defendant CONY did not have the authority to exercise control and supervision over plaintiff's work. The contract which counsel relies merely establishes that others had authority to exercise control and supervision but not to the exclusion of what authority, if any, the defendant CONY had to supervise and control the work performed by plaintiff. Further, it is of no import that plaintiff did not depose defendant CONY, as the movant seeking summary judgment, defendant CONY has the burden of proof. Here, the defendant CONY fails to meet its burden of proof and requires denial of its motion for summary judgement pursuant to Labor Law 241(6). Having failed to meet its burden of proof, there is no necessity to address plaintiff opposition to summary judgment pursuant to Labor Law 241(6). Additionally, it is noteworthy that defendants fail to address in any way that plaintiff's [*9]alleged violations of the NYCC Industrial Code do not apply in the present matter. Such omission to address these violations is fatal to its application for summary judgment pursuant to Labor Law 241(6) and of itself requires a denial of its motion.
Labor Law 200 and common law negligence.
Labor Law 200 is a codification of common law negligence and imposes a duty upon owners and contractors to provide workers with a safe place to work. Causes of action involving Labor Law 200 fall into two categories - where a worker is injured by a dangerous or defective condition and those involving that way the work is performed.Where plaintiff's injuries result in a dangerous condition or defective condition, an owner may be liable if it had either caused or created the dangerous or defective condition or had actual knowledge of such condition. (Simmons, supra.; Estrella. supra.). Where plaintiff's injuries are claimed to have resulted in the manner or means in which the work was performed an owner, contractor, its agents may be liable if they had authority to supervise and control the manner and methods of the work performed by plaintiff, not whether they exercised such authority. (Roblero, supra.) 
Here, defendant's counsel contends that plaintiff's claim pursuant to Labor Law 200 and common law negligence must be dismissed as defendant CONY did not create the dangerous condition that caused plaintiff's accident or had actual or constructive notice of the dangerous condition that caused plaintiff's injuries and asserts that a defect in the precast concrete slab being lifted caused the slab to fall onto plaintiff's foot and therefore this defective condition was not caused and/or created by defendants CONY. Even assuming arguendo that a defect existed in the slab which has not been established, same does not negate defendant's duty as an owner to provide a safe workplace. (Escobar, supra.) Defendant CONY fails to submit any evidence that it did not have actual or constructive notice of dangerous and/or defective conditions on its property. Counsel's assertion that the testimony of plaintiff allegedly "did not implicate" defendant CONY is not a fair reading of such testimony as no questions were posed to plaintiff by defendant's counsel as to defendants CONY involvement, if any, regarding the conditions of the construction site. Counsel completely ignores the testimony of other witnesses who do implicate the defendant's involvement. Nor do defendants submit any evidence, beyond conclusory statements, that the defendant had no role or input in the means or manner used to perform the work. While counsel asserts that the CONY "relinquished control of the site to DASNY", no evidence has been submitted to support such assertion. The contracts in which counsel submits do not contain any such provision and to the extent that counsel relies upon the testimony from William Gove, Thomas Polsinelli, Puran Ramkissoon and plaintiff for such proposition, none testified that the defendant CONY relinquished control to non-party DASNY. Even assuming arguendo they did testify to same, such statements would constitute hearsay as they were not parties to the contract between non-party DASNY and co-defendant JACOBS. While witness Thomas Polsinelli was a party to a contract with non-party DASNY, counsel does not rely upon this contract to advance his argument, most likely due to the fact same contains no provision stating the defendant CONY relinquished control of the site to non-party DASNY. Inasmuch as defendant CONY fails to establish it owed no duty to plaintiff or provide any evidence that contradicts or refutes that which has been submitted by plaintiff, this Court is required by law to deny its motion for summary judgment pursuant to Labor Law 200. Having failed to meet its burden of proof, there is no necessity to address the sufficiency of plaintiff's opposition. 
Similarly, defendants' motion for summary judgment seeking to dismiss plaintiff's action under common law negligence, must also be denied as defendants fail to prove it owed no duty to the plaintiff. In the present matter defendant CONY fails to meet its burden of proof to establish, prima facie, that genuine issues of fact exist. Having failed to meet its burden of proof, defendants' motion for summary judgement to dismiss plaintiff's action under common law negligence must also be denied and the Court does not need address the sufficiency of plaintiff's opposition.
Lastly, defendants' summary judgement motions seeking dismissal of cross-claims against defendant JACOBS is also denied as defendant has failed to address these claims, including indemnification and failed to establish prima facie, entitlement to summary judgment on the cross claims.
DEFENDANT JACOBS MOTION FOR SUMMARY JUDGMENT
Defendant JACOBS also cross moves for summary judgment dismissing plaintiff's Amended complaint pursuant to Labor Law 240(1), 241(6), 200 and common law negligence as well dismissing all cross claims against defendant JACOBS. Counsel contends that defendant JACOBS is entitled to summary judgment for the following reasons: defendant JACOBS owed no duty to plaintiff and did not direct or control the means and methods of plaintiff's work; that pursuant to Labor Law 240(1), plaintiff was not exposed to conditions that evoke liability upon defendant JACOB; and plaintiff's claims pursuant to Labor Law 241(6) must be dismissed as there is no evidence of a violation of the Industrial Code. Counsel for defendant also submits the same evidence as submitted by co-defendant CONY, all of which, except the contract between non-party DASNY and Third-Party defendant/Second Third party plaintiff ATLAS have been submitted by plaintiff in its's motion for summary judgement pursuant to Labor Law 240(1). In addressing defendant JACOBS motion the for summary judgement, the Court is once again mindful of burden of proof and for clarity, will address each section of the Labor Law in which defendants seeks to dismiss plaintiff's complaint.
Labor Law 240(1)
Defendant Jacobs contends they are entitled to summary judgment as matter of law since they owed no duty to plaintiff and did not direct or control the means and methods of plaintiff's work. As previously discussed, Labor Law 240(1) imposes a non-delegable duty upon owners, all contractors, its agents to provide safety equipment/devices as delineated in said section to prevent all risks inherent in the elevated nature of the work, regardless of whether such owner, contractor or its agents' exercised supervision or control over the work. (Ross, supra.). Counsel contends that pursuant to its contract with non-party DASNY, defendant JACOBS was hired as a construction manager and not a general contractor which did not require and/or permit defendant JACOBS to either direct or control the work nor the means or methods of construction utilized by any contractor on site. Further, defendant asserts that said contract contained a provision which specifically stated same do not create "any agency relationship between the OWNER and the CONSTRUCTION MANAGER" and does not create or appoint the CONSTRUCTION MANAGER as an agent of the OWNER. Counsel also submits the contract between non-party DASNY and Third-Party defendant/Second Third Party Plaintiff ATLAS, plaintiff's employer stating that the Contractor is responsible for site safety and protection. Defendant also relies upon the testimony of its witness, William Gove who testified that defendant JACOBS was the construction manager. It is counsel's position that these submissions prove defendant JACOBS was a construction manager and not a general contractor or any type of such contractor or a [*10]statutory agent of the owner within the meaning of Labor Law 240(1). As such, liability cannot attach to defendant JACOBS and therefore defendant JACOBS is entitled to summary judgment on this claim as a matter. 
As previously discussed above, based upon the undisputed deposition transcripts and the contracts between non-party DASNY and defendant JACOBS, defendant JACOBS can be considered a contractor under Labor Law 240(1). (Kavouras, supra.; Nucci, supra.). Reliance upon the contract between non-party DASNY and Third-Party Defendant/Second Third-Party Plaintiff ATLAS completely ignores the broad contractual obligations provided in the contact between defendant JACOBS and non-party DASNY as outlined above. Counsel's position that it was not the general contractor or a statutory agent of the owner for the purpose of Labor Law 240(1) is contradicted by its own submissions. Based upon the evidence submitted, defendant JACOBS fails to raise a triable issue of fact that defendant JACOBS did not have the authority to supervise, control and or direct the way the concrete slab was lifted at the time of plaintiff's accident. Moreover, defendant JACOBS does not dispute that its employee Pete was at the site on the day of plaintiff's accident or that its employee Pete directed, supervised and approved the work of ALTAS employee Purin Ramkissoon prior to plaintiff's accident. 
Counsel also contends that defendant JACOBS is entitled to summary judgment dismissing plaintiff's Labor Law 240(1) claim as plaintiff was not exposed to a gravity related risk.Contrary to counsel's statements, the injury producing event does fall within the ambit of LL 240(1). The testimonial evidence submitted by defendant JACOBS fails to demonstrate that the work plaintiff was performing at the time of his accident was not covered under the provisions of Labor Law 240(1). The testimony is uncontroverted that the precast concrete slab (weighing approximately 1,000 to 1,400 pounds) fell from an elevated position (approximately 2-4 feet) onto plaintiff's foot while being lifted for transport. Moreover, contrary to counsel's contention, that the slab did not fall from a "physically significant elevation differential", not only misconstrues the testimony, but does not comport with the law. The extent of such differential elevation is not determinative of the elevated risk inherent in the work being performed. Rather, what is determinative is whether the plaintiff's injuries were a "direct consequence" of the failure to provide proper protective equipment as listed in the statute arising from a physically significant elevation differential." (Wilinski v. 334 East 92ndhous. Dev. Fund Corp., 18 NY3d 1 [2011]; Runner, supra). An elevated differential will not be considered "de minimis. . .given the weight of an object and the amount of force it was capable of generating even over the course of a relatively short descent." (Wilinski, supra). In the present matter, it is undisputed that the precast concrete slab, weighing between 1,000 to 1,400 pounds, was not ground level at the time of plaintiff's accident and was distance off the ground when it fell onto plaintiff's foot. 
Further, defendant JACOBS fails to address whether safety devices were available on site to adequately lift the concrete slab or that safety devices as listed in the statute were defective or that the worker refused to use such safety device. Here, defendant JACOBS fails to submit any evidence disputing that no protective equipment was provided beyond a single nylon strap/rope to lift the precast concrete slab or that proper protective equipment was provided which plaintiff refused to use or that such protective equipment was defective. Nor does Defendant JACOBS contend that plaintiff's actions were the sole proximate cause of the accident. Here, defendant JACOBS fails to meet its burden of proof which requires denial of its motion for summary judgment dismissing plaintiff's claim pursuant to Labor Law 240(1). Having failed to meet its [*11]burden of proof, there is no necessity for the Court the sufficiency or lack thereof of opposing papers.
Labor Law 241(6)
In the present matter, defendant JACOBS asserts it is entitled to summary judgment dismissing plaintiff's Labor Law 246(1) upon the ground that there is no evidence of a violation of the Industrial Code. It is well settled law that to be successful on a Labor Law 241(6) claim, the plaintiff must prove a specific violation of the Industrial Code. (Rivas v. Purvis Holdings, LLC. 222, AD3d 76 [2d Dept., 2023]). This Court agrees, based upon the uncontroverted facts as to the happening of this accident, plaintiff's claims of violations of 12 NYCRR 23-2.2(a) and (c)(3) are not applicable to this case. Nor is 12 NYCRR-8.2(c)(3) or 23-9.8(f), (g) or (h). However, contrary to counsel's assertion, plaintiff's claim that defendants violated 12 NYCRR 23-6.1(d) which specifically addresses material hoisting equipment is applicable to the present matter. Said regulation, in part states. . .."[s]uspended loads shall be securely slung and properly balanced before they are set in motion" and excepts certain listed material hoisting devices which does not include a backhoe. In the present matter, defendant fails to submit any evidence that any safety device such as or sling or additional roping or braces to balance the precast concrete slab, weighing approximately between 1000 to 1400 pounds and irregular in shape, were available for plaintiff or other workers to use in the lift or that the plaintiff refused to use same or that such safety devices(s) were defective. Here, defendant fails to meet its burden of proof in establishing, prima facie, entitlement to summary judgment pursuant to Labor Law 241(6). Having failed to meet its burden of proof, the Court is required to deny defendant JACOBS and need not address the sufficiency of plaintiff's opposition. 
Labor Law 200 and common law negligence
As previously discussed above, Labor Law 200 is a codification of common law negligence and imposes a duty upon owners, contractors, its agents to provide workers with a safe place to work. Here, there is unrefuted testimony that Pete from defendant JACOBS directed, supervised and approved the way the concrete slab was lifted and was present while same was being lifted. The fact that one such concrete slab was lifted without falling immediately before plaintiff's accident does not negate that a dangerous condition existed in lifting a precast concrete slab weighing approximately between 1000 to 1400 pounds and irregular in shape without any proper protective equipment placed on or around the concrete slab being lifted at the time of plaintiff's accident such as additional ropes, or a sling to prevent the precast concrete slab from falling. Similarly, it is immaterial whether the concrete slab had any loops and or burkes attached to it for lifting or that such slab was allegedly defective, as same does not negate the need for proper protective equipment for hoisting such material. Here, based upon the evidence submitted, defendant JACOBS does not establish, prima facie, that they did not owe a duty to plaintiff; did not have the authority to supervise and control the way plaintiff performed his work, or that defendant did not cause and create a dangerous condition to exist. Having failed to meet its burden of proof, defendant JACOBS motion seeking to dismiss plaintiff's complaint pursuant to Labor Law 200 and common law negligence must be denied and there is no necessity for this court to address the sufficiency of opposing papers submitted by plaintiff.
Lastly, defendant JACOBS seek the dismissal of their respective crossclaims. However, defendant JACOBS fails to address these cross-claims in their its cross motion and in failing to do so defendant JACOBS fails to meet its burden of proof establishing, prima facie, entitlement [*12]to summary judgment dismissing their cross-claims. Therefore, that portion of Defendants JACOBS motion seeking dismissal of all cross-claims be must be denied.
The court has considered both defendants remaining contentions, as well as the contentions of Second Third-Party Defendant Betons opposition, who plaintiff did not seek any relief against said party, and find them to be unavailing.
Accordingly, it is hereby:
ORDERED that Plaintiff's motion for summary judgment on the sole issue of liability pursuant to Labor Law 240(1) is granted; defendants, CITY OF NEW YORK , DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES OF THE CITY OF NEW YORK and the CITY OF NEW YORK DEPARTMENT OF DESIGN AND CONSTRUCTION cross-motion for summary judgment dismissing plaintiffs' claims pursuant to Labor Law sections 240, 241(6) 200 and common law negligence as well as summary judgment dismissing the crossclaims for common law indemnification and contribution asserted by co-defendant JACOBS PROJECT MANAGEMENT CO is denied and co-defendant, JACOBS PROJECT MANAGEMENT CO cross-motion seeking summary judgment dismissing plaintiff's Amended Verified Complaint pursuant to Labor Law 240, 241(6) 200 and common law negligence and any all cross-claims against said co-defendant JACOBS is denied.
The foregoing constitutes the decision and order of this court.
ENTER,
Dated: March 5, 2024
Hon. Orlando Marrazzo, J.S.C.

Footnotes

Footnote 1:The transcripts submitted describe the machine as being either a "forklift", "an excavator" or a "backhoe".

Footnote 2:It is interesting to note that counsel for defendant CONY appeared and answered on behalf of ATLAS sued as a Third-Party defendant and also commenced a Second Third Party Action on behalf of ATLAS as a Second Third Party Plaintiff. Any assertion by counsel's attempting to shift liability upon ATLAS poses a potential conflict of interest in representing both defendant CONY and Third-Party defendant/Second Third Party Plaintiff ATLAS.